| 129 | 619 |
| 26 SC | ¹138 |

## JOS. G. BEALE v. B. F. JENNINGS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF ARMSTRONG COUNTY.

Argued October 15, 1889—Decided October 28, 1889.

1. When one partner sells to another by articles of agreement all his interest in the assets of the firm, in consideration of the covenant of the vendee to pay all the partnership liabilities, the vendor may sustain assumpsit against the vendee to recover a partnership liability to himself.
2. A covenant of general warranty of "all and singular the hereditaments and premises," described in a deed which conveys real estate and also certain gas wells with their connections and appliances, will be construed to apply only to the title to the real estate conveyed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 31 October Term 1889, Sup. Ct. ; court below, No. 108 March Term 1888, C. P.

On December 31, 1887, Joseph G. Beale brought assumpsit against B. F. Jennings, his statement of claim being as follows :

" This suit is brought to recover from the defendant, B. F. Jennings, the sum of $2,719.09, with interest from October 30, 1886. The claim arises as follows : The firm of Jennings, Beale & Co. was composed of the plaintiff and defendant, and on October 30, 1886, was indebted to plaintiff in the sum of $2,719.09, a statement of the account showing the nature and character of said debt being hereto annexed and made part thereof. On February 21, 1887, the said firm of Jennings, Beale & Co., still owing said sum to plaintiff, and it being then one of the liabilities of said firm, the defendant, by an agreement made and entered into with plaintiff, a copy of which is hereto annexed and made part hereof, agreed and undertook for sundry good considerations to pay the liabilities of said firm, which included the present claim. This however, he has failed to do, though requested and required so to do, and this suit is therefore· brought to enforce his said undertaking and agreement, and collect from him the amount of said account, viz. : $2,719.09, with interest from October 30, 1886."

At the trial on September 19, 1888, upon the general issue, it was made to appear that on January 29, 1886, the plaintiff and defendant entered into a copartnership, under the firm name of Jennings, Beale & Co., each partner agreeing to contribute $50,000 to the firm assets. The defendant paid his contribution in cash. The plaintiff paid in cash $10,000, and conveyed to the defendant, in trust for the partnership, certain real estate, being the plant and fixtures, etc., of the West Penn. Steel Works, together with three gas wells, one of which was in Allegheny Tp., Westmoreland county. The deed was in the ordinary form and contained a covenant of general warranty of "all and singular the hereditaments and premises hereinabove described."

On October 27, 1886, all the assets and property of the co partnership were turned over to a limited partnership then organized by the defendant and others, under the firm name of Jennings, Beale & Co., Limited, and on February 27, 1887, the

plaintiff by a sealed instrument sold and transferred to the defendant, inter alia, all his stock and interest in the firm of Jennings, Beale & Co., Limited, in consideration of certain covenants on the part of the defendant, inter alia, "That the said B. F. Jennings will and he hereby does assume and agree to pay all the liabilities of the firm of Jennings, Beale & Co., and he hereby agrees to protect, indemnify and save harmless the said Joseph G. Beale of and from any loss, expense or damage by reason thereof."

The account of the indebtedness of Jennings, Beale & Co., to the plaintiff, as given in the statement of claim, was admitted to be correct.

The matters set up in the defence to the plaintiff's claim sufficiently appear in the charge to the jury, NEALE, P. J., which in part was as follows:

Mr. Jennings, in his own behalf, has come upon the stand, and by his evidence has attempted to show a different set of facts than those which would appear at first, from the evidence of the account, namely: that he entered into this contract with Mr. Beale upon certain statements that were made to him by Mr. Beale, and especially the representations with regard to some gas wells. They had, it seems, three gas wells, with their connections to the works. These wells were for the purpose of supplying the works with fuel, and the connections were made by a line of pipe extending from the works to the different wells. It is alleged, upon the part of Mr. Jennings, that those three wells were lumped at a value of $10,000, and put in as a part of the capital of Mr. Beale and represented, in the capital that he supplied to the firm, the sum of $10,000; that at a time prior to the making of the contract which they entered into, Mr. Beale had agreed with Mr. Jennings that he would clean out and put in order and condition these different wells at his own expense, and that these wells furnished him with an inducement to enter into the arrangement with Mr. Beale.

The defendant has shown with respect to one of these gas wells, the one over in Westmoreland county, that it was clogged with salt and partially filled up with water, I believe is the language used, and that Mr. Jennings appeared to have some knowledge of that at the time; that that was represented to

him at that time. It was that kind of property that he would have a right to examine himself. We are free to say to you, he made the bargain for such property with his eyes open. It would be very proper, we do not say that it was a legal obligation in this kind of a case for him to do so, but as a prudent, careful man, he had a right to go and see the condition of those wells before he entered finally into this contract. Whether he did so, or not, will be for the jury, under all the evidence in the case, to determine.

It seems that, afterwards, this well over in Westmoreland county was not repaired at all by Mr. Beale; that it was not improved nor anything done towards making it better or improving it, at any other time afterwards. [Some time in the year 1887, while it seems that Mr. Beale was still superintendent for the firm which succeeded the original firm, the railroad company gave notice to the firm, or to Mr Beale, whichever it may be, that they required the gas pipe to be taken up from the old canal along which it appears to have been laid. It does not appear in the evidence how much or how far this gas pipe extended along that old canal. The plaintiff says it extended some distance along the canal. The company, or Mr. Beale, had notice from the railroad company, who wanted to take possession of their ground, that this gas pipe must be removed. It appears that it was removed and taken up, but it does not appear to have been re-laid, so far as the evidence goes, and the evidence is really obscure with reference to this gas line. It is obscure as to what was done with regard to the taking up of the gas line, whether it was by the firm, upon notice given to the firm with regard to the firm's property, because it was the property of the firm, or whether it was upon notice given individually to Mr. Beale; or, whether the act was the act of Mr. Beale, as his own act, independent of any connection with the firm, or how. It is not clearly stated in the evidence, and you will have to draw your own inference, because I think that this has some bearing in this case. If Mr. Beale was then the official representative of the firm and acted for the firm, and took it off for the firm, and used it as firm property, it might be a question, and a very serious one, whether the individual Beale would afterwards be accountable for his action, if he acted in that capacity as superintendent of the works, he being

Charge of Court below.

then the superintendent of the works. If it was Mr. Beale acting for himself and upon his own responsibility, then there might be a question of his liability over to the firm for whatever he did. That is a question that we submit to the jury. It belongs to this case, we think, and we suggest it as a matter for your consideration.] [1]

This well over in Westmoreland county does not appear to have been cleaned out. Was it because it was an exhausted well, no longer productive of gas? Because, if you find that that was so, the law in that respect would not require of Mr. Beale to do a vain thing, to bring gas out of a well when it was not there; nor do we say to you that the law would impose upon Mr. Beale an assurance to Mr. Jennings, the purchaser, that the gas would continue in any of the wells for any unlimited time. We all understand the uncertainty of the production of a gas well. Sometimes they will do well for months, and probably years, and sometimes their supply will almost suddenly cease. That is a part of your consideration, if you come to consider what the value of these gas wells was, and how they afterwards came to be valued at a less price than they were valued at when Mr. Beale made his transfer to Mr. Jennings. That is a matter for your consideration.

Then we say to you, with respect to that, if this gas well were an exhausted gas well, and it were unreasonable to spend money upon its improvement or attempted improvement, it would be a vain thing, and Mr. Beale would not be required to do that. That will be for the jury, under all the facts, to determine. Then if the gas well itself were of no value, the gas line leading to it would be comparatively valueless, so far as a gas line is concerned, and the gas pipe would be of more value to the firm if they took it up. If not, if they appropriated it to themselves as a firm, it would be lying there extending to a non-productive gas well. I speak of that with reference to the warranty that is pressed before this court as of weight in this case as a matter of defence. We say to you, so far as the purposes of this case are concerned, that if Mr. Beale entered into a warranty for the property that he conveyed to Mr. Jennings, he is bound by that warranty. He must make good whatever he does warrant. Now, then, if he warrants that gas well to be a productive gas well, and to continue as such for

any definite period, or for a continued period, he would be bound by that warranty, so far as the purposes of this case are concerned, and we instruct you in that way. But if he did not do so, and if Mr. Jennings took the gas well with the risks, that any one who is likely to invest in that kind of property ordinarily takes, then he takes the chances of the gas well continuing good or ceasing to be productive, and if it ceases to be productive, then that warranty would not amount to very much. As to that, it would become a matter for the jury to determine, under all the evidence in the case, what is the actual loss by reason of any breach of that warranty to Mr. Jennings, if there was any actual loss. That is a question for the consideration of the jury. The actual loss may not be what the value of the well was at the time of the purchase by Mr. Jennings, or it may not be what its increased value may have been afterwards; but it is the actual damage sustained, taking into consideration the chances of the continuation of the gas and the necessity of keeping up that gas line. Now, was the taking up of that gas line a loss? Was it a breach of the warranty under the circumstances of the case? You will bear in mind that it is not contradicted that the company did make some improvements, and did do some work on the other two wells. Was this to be an exception? Was Mr. Beale to work at this well and the company to work at the other two? There is no evidence, we do not see that it was required that Mr. Beale should have had notice, if that was a part of his condition and a part of his agreement to improve these gas works. It was his duty to do so if that was his agreement. But you are to determine, from all the evidence in the case, whether or not that was his agreement, and that part of the evidence which shows that the company did improve the other two wells, has some bearing upon that question which you will have to consider.

\*          \*          \*          \*          \*          \*          \*          \*

On the part of the defendant we have been requested to charge you:

5. That under all the evidence, an action of assumpsit will not lie, the proper remedy being by bill in equity for the settlement of the partnership accounts, and the verdict should be for the defendant.

Answer: That point is refused.[2]

The jury returned a verdict for the plaintiff for $3,028.15. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error:

1. The portion of the charge embraced in [ ] [1]
2. The answer to the defendant's point.[2]

*Mr. W. K. Jennings* (with him *Mr. W. D. Patton*), for the appellant.

Counsel cited, (1) Upon the point that incorrect and misleading expressions are sufficient ground for reversal: Bughman v. Byers, 21 W. N. 494; Penna. Canal Co. v. Harris, 101 Pa. 80; Garrett v. Gonter, 42 Pa. 143; Relf v. Rapp, 3 W. & S. 21; Reber v. Herring, 115 Pa. 599. (2) Upon the point made as to the remedy: 2 Bates on Partnership, §§ 849, 857; Leidy v. Messinger, 71 Pa. 177.

*Mr. M. F. Leason* (with him *Mr. J. H. McCain, Mr. Joseph Buffington* and *Mr. Orr Buffington*), for the appellee.

PER CURIAM:

The point that an action of assumpsit would not lie in this case is not well taken. The settlement of the partnership accounts is not involved in this issue. The suit was brought upon articles of agreement by which the plaintiff sold to the defendant all his interest in the assets of the firm of Jennings, Beale & Co., Limited; the latter assuming all the liabilities of the firm, and covenanting to save the former harmless therefrom.

The only other specification of error relates to the charge of the court in regard to the gas well. If the charge is obscure in this respect, it is the fault of the case, not of the court below. There was little, if any, evidence as to the value of the gas well at the time the pipes were taken up. The gas might have entirely given out, in which case it was worthless. If so, the taking up of the pipes worked no injury. Aside from this, I do not find any warranty in the deed of Beale to Jennings affecting the title to the well. Beale merely sells his "right, title, and interest" therein, and the covenant of warranty evidently refers to the real estate subsequently described in this

deed. While the whole case comes before us in a very obscure way, we are unable to see any grounds upon which it can properly be reversed.

Judgment affirmed.