**520**

## In the Matter of the Estate of CHARLES H. HASTINGS, Deceased.

Surrogate's Court, New York County, May 12, 1944.

*Michael H. Cardozo, Jr.,* for Irving Trust Company, as executor, petitioner, and Irving Trust Company, as trustee, respondent.

*Edwin T. Murdoch* and *James N. Vaughan* for Ernest C. May, as executor, petitioner, and Ernest C. May, donee of a power in trust, and another, respondents.

*Forrest M. Anderson* for Edward L. Center and others, respondents.

*Hamilton McInnes* for State Tax Commission.

*Nathaniel L. Goldstein, Attorney-General (Harry F. Karst* of counsel), for State of New York.

*Thomas A. Ryan,* special guardian for Susan Center, an infant.

DELEHANTY, S. When the will of deceased is examined as a whole it is seen that he intended to charge the capital of his estate only with his debts, funeral expenses (including a mausoleum) and the outright legacies provided for in paragraphs third and eighth of the will. His major and controlling purpose was to put all the rest of his capital into the hands of his trustee with direction that it use part to erect a sanitarium and that it invest and keep invested the remainder of his capital with the income to be used wholly for charitable purposes, except that temporarily some of such income would be paid to persons to whom he bequeathed what he called annuities. He made the *income* in the hands of his trustee " subject, except as to real estate, to the payment of the annuities hereinabove bequeathed ". That he intended to limit the rights of these so-called annuitants to rights only in income derived from the residuary in the hands of the trustee is evident when the paragraph of his will is looked at which was intended to become operative if his primary charitable plan was found impossible for any reason. In his alternative plan he provided for outright payments to existing charities to be selected by his individual executors but directed in that case — *and in that case only* — that his corporate executor should retain enough capital to pay the so-called annuities. Since the major charitable purpose has been found to be practicable and since the estate is in fact to be devoted to the purpose desired by deceased the so-called annuitants have only rights to share in the residuary income.

The fact that their shares are called annuities is not controlling. Both branches of this court have had occasion recently to deal with wills using like terms and each branch of the court has found occasion to review the authorities on the subject. (*Matter of Mayer,* N. Y. L. J., February 5, 1944, p. 490, col. 1; *Matter of Brown,* 183 Misc. 470; *Matter of Selig,* N. Y. L. J., April 7, 1944, p. 1359, col. 5.) The cases cited and the authorities reviewed therein sufficiently demonstrate that the use of the word " annuity " does not constrain a holding that a common-law or other true annuity is necessarily created by such use. The whole tenor of the will of deceased negates the idea that any so-called annuitant was ever to have any right to trench upon capital. On the contrary the whole of deceased's capital except for the modest outright legacies which he gave was devoted to the charitable purpose desired by him. When he drew his will deceased was fully alive to the fact that his assets, known to him at the time to be very large, would assure the completion of his major chari-

table plan and of his incidental plan to care for his so-called annuitants on a modest monthly income basis. It is with that knowledge of the extent of his resources that he made their interests merely charges upon his residuary income. His will further negates any interest in capital on the part of his so-called annuitants by expressly providing that they would have no interest in his real property. Thereby deceased eliminated a possible difficulty in the sale of his realty and assured the devoting of the proceeds to his charitable purposes.

Since the court holds under the particular terms of this particular will that the so-called annuitants were given only '' an interest in income '' it holds that the tax imposed upon that interest is payable out of the capital fund from which the income is derived. This ruling is made in accordance with the exception contained in the first paragraph of subdivision 1 of section 124 of Decedent Estate Law which provides '' that in cases where a trust is created, or other provision made whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interests and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates.''

The outright beneficiaries must contribute their ratable share of the estate taxes since that result is constrained by the general provisions of the cited section of Decedent Estate Law.

The so-called transfer tax imposed by the State of California is to be dealt with as an administration expense. That State imposed a tax because real estate owned by deceased was located in California. Having such basis for imposing a tax and having the realty as a source from which the tax could be collected, it is apparent that California must be paid the tax fixed by that State though deceased was domiciled in this State. Though deceased expressly said that his real estate was not to be charged with the so-called annuities the State of California has undertaken to fix the value of the income rights of the so-called annuitants and to compute a tax based upon the value of such rights. Our courts would not undertake to enforce such a tax (*State of Colorado* v. *Harbeck,* 232 N. Y. 71; *Matter of Martin,* 255 N. Y. 359) but the estate representative must discharge the tax since otherwise it cannot deal with the California real estate. In such circumstances the California **tax must be dealt with as an administration expense just as**

were other expenses of reducing to possession assets of deceased over which Montana and Canada claimed tax rights.

Submit, on notice, decree construing the will and settling the account in accordance with this and the prior decisions of the court.