## Goldberg, Appellant, *v.* Goldberg.

Argued April 17, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Fairfax Leary, Jr.,* with him *Charles C. Hileman, III, J. Paul MacElree, Lawrence E. MacElree, MacElree & MacElree* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*W. Edward Greenwood,* with him *Thomas C. Gawthrop, D. J. C. O'Donnell* and *Gawthrop & Gawthrop,* for appellee.

OPINION BY MR. JUSTICE BELL, October 5, 1953:

Plaintiff brought a bill in equity to compel defendant to execute and deliver to him a deed for his undivided interest in partnership real estate as to which defendant, fourteen years ago, had assigned all his right, title and interest. Defendant contended that the prior assignment was intended to cover only his interest in the partnership assets which were personal property. The chancellor found against the defendant on this issue, but refused to order a conveyance by defendant because the original agreement (assignment) did not comply with the Partnership Act and because plaintiff had not liquidated the partnership business and therefore was not entitled to equitable relief. These

last objections and issues were raised by the Court and were never raised at any time by defendant.

The material facts are these: Harry Goldberg, plaintiff, Jacob Goldberg, defendant, and their brother, Reuben Goldberg, on July 19, 1920, formed a partnership for the purpose of carrying on a junk business under the name of "Goldberg Brothers". In 1920, the partnership purchased a tract of land and in 1931 purchased another tract of land. Reuben died in 1937 and his brothers, Harry and Jacob continued to carry on the partnership business. Reuben's estate still had rights in the partnership; but Reuben's rights in specific partnership property expired at his death and vested in his surviving partners: Sections 42 and 25 (2) (d) of the Uniform Partnership Act, March 26, 1915, P. L. 18, 59 PS 104, 72.

On March 23, 1938, the partnership business was in a precarious condition and Harry and Jacob and Reuben's administratrix were having family differences. The surviving partners, Harry and Jacob, thereupon entered into a written agreement which recited that it was Jacob's intention to sell and Harry's intention to purchase, all the right, title and interest of Jacob in and to the assets of Goldberg Brothers; and in consideration of the payment by Harry to Jacob of $500, Jacob transferred and assigned to Harry "all his undivided interest in and to all the assets belonging to him as one of the surviving partners of Goldberg Brothers . . . ."

The chancellor found that when Jacob executed this assignment he knew its contents and intended thereby to assign and transfer all his right and interest in and to the partnership and to all its property of whatever nature, including the partnership real estate. Harry Goldberg has been in peaceable possession of the partnership property, including the partnership

real estate, ever since March 23, 1938, but has never liquidated the partnership. Reuben's administratrix subsequently executed a quit-claim deed to the partnership real estate for $200, transferring all of Reuben's interest therein to plaintiff, so that no claim or complaint is made by the estate of Reuben Goldberg. Moreover, if any creditors exist, the record shows that they have not appeared or raised any question or taken any adverse action for fourteen years, although during that entire time the real estate was recorded and standing in the name of the partnership, Goldberg Brothers.

The Uniform Partnership Act created a new kind of estate "a tenancy in partnership". Because of the confusion and the inequities which frequently arose from treating partners as joint tenants and the application of the legal incidents of joint tenancy to partners, the Uniform Partnership Act was passed by the Legislature, with the intention of establishing a new type of ownership and providing a fair and workable law, which would eliminate the confusion and inequities which had arisen and would protect partners and partnership creditors. This is important to remember in construing the Act because if there be any ambiguity therein or "When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law." 1937, May 28, P. L. 1019, art. IV, §51, 46 PS 551.

The Court below predicated its refusal of equitable relief on the ground that Jacob could not lawfully assign his interest in specific partnership real estate except in the exact manner provided by Section 25 (2) (b) of the Uniform Partnership Act, even though he had intended to assign his rights therein by the sales agreement of 1938. Section 25 (1) and (2) (b) of the Uniform Partnership Act provides: "(1) A partner is co-owner with his partners of specific partnership property, holding as a tenant in partnership. (2) The incidents of this tenancy are such that: ... (b) A partner's right in specific partnership property is not assignable, except in connection with the assignment of the rights of all partners in the same property."

Considered alone, the language of this section is broad enough to prohibit a partner from assigning or releasing his rights in specific partnership property to his sole remaining partner or partners, unless the rights of all the partners in the same property were likewise assigned. An examination of the reasons for the Partnership Act and the rights given to partners thereunder, as well as other provisions of the Act, make clear that that was not the intention of the Legislature. We agree with the opinion and decision in *Becker v. Hercules Foundries, Inc.*, 33 N.Y.S. 2d 367 (1942). The Court there sustained an action by a remaining partner for work, labor and services and for damages for breach of contract where his co-partner had assigned those specific partnership claims to him. The Court said: "The Partnership Law does not preclude an assignment by one partner to another partner of a cause of action or specific property theretofore belonging to a partnership of two persons, but merely forbids such an assignment by one partner to a third party or stranger unless it is joined in by all of other part-

ners, or [forbids] an assignment to a partner not executed by all the other partners."

The Partnership Act was intended to define and protect a partnership and the rights of partners and of partnership creditors. The reasons for the non-assignability by one partner alone of his interest in specific partnership real or personal property are set forth in the Commissioner's Notes, 7 Uniform Law Annotated, Partnership, pages 145-150, and may be summarized as follows: (1) It prevents the interference by outsiders with the conduct of partnership business and the possession, management and disposition of partnership property (See *Horton's Appeal,* 13 Pa. 66 (1850)); Lewis, the Uniform Partnership Act, 24 Yale L.J. 617, 631 (1915); (2) Partnership is a voluntary relation,—a person may not have a partner thrust upon him without his consent; (3) It is often impossible to measure a partner's beneficial interest in a specific partnership asset; (4) Neither other partners nor firm creditors may be deprived of the right to have all firm assets applied to the payment of firm debts, (See *Blaker v. Sands,* 29 Kan. 551 (1883)); (5) A creditor of one partner may not attach or in any manner acquire a lien on specific partnership property to the exclusion of firm creditors or creditors of other partners. The reasons are persuasive, practical and wise, but they have no application to a case such as the instant one. Under Jacob's assignment to Harry no outsider could interfere with the conduct, possession or management of the partnership or partnership property. No new partner is admitted into the partnership. No other partner, or no partnership creditor is deprived of his right to have the partnership assets applied to the payment of partnership debts; and no other partner nor the creditors of the partnership are prejudiced and neither are subordinated to claims of

creditors of individual partners. Even, therefore, if section 25 (2) (b) stood alone, a construction which prohibited an assignment or release of specific partnership property to the remaining or surviving partner, or to the remaining or surviving partners, with the consent of all, would be unreasonable.

Section 41 (1) and (2) of the Uniform Partnership Act provides as follows: (1) "When any new partner is admitted into an existing partnership, or when any partner retires and assigns (or the representative of the deceased partner assigns) his rights in partnership property to two or more of the partners, or to one or more of the partners and one or more third persons, if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business."

"(2) When all but one partner retire and assign (or representative of a deceased partner assigns) their rights in partnership property to the remaining partner who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business."

Section 41, (1) and (2) impliedly but clearly recognize that the rights in partnership property may be assigned to the remaining partner or partners, which is in accord with the practice and the law as it has always existed in Pennsylvania: Cf. *Collner v. Greig,* 137 Pa. 606, 20 A. 938; *Ralston v. Ihmsen,* 204 Pa. 588, 54 A. 365; *Farrell v. Young,* 26 Pa. Superior Ct. 135, 138; *Ihmsen v. Huston,* 247 Pa. 402, 93 A. 601. In *Farrell v. Young,* 26 Pa. Superior Ct., supra, the Court said: "Where one sells his interest in the partnership to another partner he may maintain an action for the

price: Klase v. Bright, 71 Pa. 186; Beale v. Jennings, 129 Pa. 619; Draucker v. Arick, 161 Pa. 357."

The Circuit Court of Appeals of the United States, Ninth Circuit, in *Stilgenbaur v. United States,* 115 Fed. 2d 283, sustained a retiring partner's transfer of all his interest in the partnership property, consisting of cash, accounts and real estate, to his remaining partners and held that the general prohibition against assignability in §25 (2)(b) of the Uniform Partnership Act must yield to other provisions of the Act which authorized the assignment of the partner's co-ownership in the partnership property to the partners continuing the business.

We therefore hold, from a consideration of the entire Act and the reasons for its passage and particularly for its provision dealing with the non-assignability by one partner alone of his interest in specific partnership property, that §25 (2)(b) was intended to cover and prohibit a partner from assigning to a third party his right in specific partnership property and was not intended to apply to or prohibit an assignment by a partner to his sole remaining partner, or even to his other partners, with the consent of all partners, of his right in specific partnership property.

It follows that Harry Goldberg is entitled to the equitable relief he sought in his bill of complaint, unless he came into equity with unclean hands. The Court below refused any and all equitable relief because it believed that plaintiff came into Court with unclean hands and therefore had no right to relief in equity without winding up and liquidating the partnership affairs and thereby applying the real estate in question to the discharge of partnership liabilities. The Court below did not grant the prayer of the bill and make that a condition of a decree in plaintiff's favor; it held that plaintiff was not entitled to any

equitable relief whatever! In this connection, we repeat that neither the defendant nor the representative of Reuben, the deceased partner, nor any creditor has requested such liquidation, nor has asserted that plaintiff came into Court with unclean hands or (for that reason) has objected to the relief which plaintiff seeks. The real estate is still an asset of the partnership and is subject to the claims of partnership creditors, see §41; and there is no proof of an intention to defraud creditors or that the conveyance sought would affect the solvency of the partnership.

In *Dales v. Muir,* 351 Pa. 187, 40 A. 2d 476, where this Court refused to apply the clean hands doctrine or to deny equitable relief where the fraud, if any, affected only creditors or third parties who were not parties to the suit, Mr. Justice PATTERSON said (page 190) : "Not every improper act done by a party to a litigation will preclude him from securing equitable relief. The maxim of clean hands is applicable only where the wrongdoing of the plaintiff directly affects the equitable relations subsisting between the parties: Vercesi v. Petri, 334 Pa. 385, 387; Robinson v. Goldberg, 331 Pa. 401, 405; Comstock v. Thompson, 286 Pa. 457, 461; Fishblate v. Fishblate, 238 Pa. 450, 457; Hays' Estate, 159 Pa. 381, 386; Finch v. Conrade's Executor, 154 Pa. 326, 330. . . .

"The stipulation of counsel, which constitutes the record in this case, does not contain any statement which shows that, in fact, there was any fraud perpetrated upon the respective vendees. Assuming, however, the existence of fraud, the result is unchanged. Fraud necessary to invoke the clean hands doctrine must affect the very subject matter at issue. Further, fraud is not a marketable commodity. It can be pleaded only by the one upon whom it is perpetrated and in whom the option to rescind or affirm exists: Ornë

v. Kittanning Coal Co., 114 Pa. 172. The wrong, if any, was not done to appellants but to a third party."

In *Johnson v. Jackson,* 82 Fed. Supp. 915, Judge KIRKPATRICK said (page 918): "In the absence of the proved intention to delay or defraud creditors, there is no legal objection to a transfer of partnership property from the firm to one of the partners: Am. Jur., Partnership, 420. No such intention appears in the present case . . . Even so, there is nothing to show that it would make the partnership insolvent. . . ."

The record discloses no fraud or unclean hands on the part of the plaintiff which is sufficient to justify a denial of the equitable relief requested in his bill of complaint.

The order of the Court below is reversed and the case is remanded to that Court, with directions to enter a decree in favor of the plaintiff consistent with this opinion; costs to be paid by defendant.