**S. Arnold LYNCH, Executor of the Estate of Harry Lynch, Deceased, Appellant,**

v.

**KENTUCKY TAX COMMISSION et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1960.

S. Arnold Lynch, Louisville, for appellant.

Bradford T. Garrison, Frankfort, for appellees.

---

MONTGOMERY, Chief Justice.

Two questions are presented here: (1) Whether Chapter 140 of the Kentucky Revised Statutes requires the estate of a deceased resident to include in the gross estate for inheritance tax purposes the interest of the decedent in a partnership whose business was located in another state; and (2) if that interest must be included, whether the amount of inheritance tax paid to the sister state is a deductible item.

S. Arnold Lynch is the executor of the estate of Harry Lynch, who died December 8, 1953, a resident of Jefferson County, Kentucky. For more than twenty years before his death, the decedent and his co-partners, each of whom was a resident of Jefferson County, engaged in the hosiery brokerage and jobbing business in Louisville under the firm name "J. M. Lynch & Bro." On April 1, 1952, the partners executed a partnership agreement in Louisville under which they conducted a business called "Sleek Hosiery Mills" in Greensboro, North Carolina.

The name of the new enterprise was registered in North Carolina by the decedent in behalf of himself and his co-partners. The partnership assets consisted of real property held in the name of the decedent, as trustee, and tangible and intangible personal property, all of which were used in the business operation in North Carolina. The decedent's interest in the partnership in North Carolina at the time of his death was valued at $49,886.85.

Pursuant to the inheritance tax laws of the State of North Carolina, the executor paid to that state the sum of $2,361.77 on the decedent's share in the North Carolina partnership. The Kentucky Department of Revenue has included the amount of $49,886.85, representing the decedent's interest in the partnership, in his gross estate and has refused to permit the estate any credit for the inheritance tax paid to the State of North Carolina.

The pertinent part of the controlling Kentucky statute, KRS 140.010, is as follows:

"* * * all intangible property belonging to persons domiciled in this state, * * * which shall pass by will * * * is subject to a tax * * *."

No question is presented as to the right of the State of North Carolina to tax.

The property, both real and personal, used in the operation and conduct of the partnership acquired a business situs

in North Carolina which had become an integrated part of a local business located in Greensboro. 15 C.J.S. Conflict of Laws § .18(c), page 929; Commissioner of Internal Revenue v. Skaggs, 5 Cir., 122 F.2d 721, certiorari denied 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210; Note, 45 Ky.Law Journal 197. Thus, North Carolina may impress any character which it may choose on the property within its borders subject to its protection and on which it confers a substantial benefit. 11 Am.Jur., Conflict of Laws, Section 29, page 327.

The Uniform Partnership Act was adopted in North Carolina in 1941 and in Kentucky in 1954. Section 59–56 of the General Statutes of North Carolina is identical with KRS 362.275, and is as follows:

"A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

At common law, there were two lines of thought concerning the conversion of realty and tangible personal property into intangibles. The English and minority American rule was the "out-and-out" conversion theory which converted the interest of a partner into intangible property for all purposes. The majority rule followed by Kentucky was the so-called pro tanto view which recognized the conversion of realty only as it was required to satisfy the partnership debts. Strode v. Kramer, 293 Ky. 354, 169 S.W.2d 29.

North Carolina followed the pro tanto rule before the adoption of the Uniform Partnership Act. Sherrod v. Mayo, 156 N.C. 144, 72 S.E. 216. In construing the Act in Ewing v. Caldwell, 243 N.C. 18, 89 S.E.2d 774, Sherrod v. Mayo was overruled and the "out-and-out" conversion rule was adopted. It was held that the Act created a new estate, to-wit: a tenancy in partnership and that this interest is personal property, in effect, for all purposes. For a discussion of the creation of the new estate of tenancy in partnership, see Goldberg v.

Goldberg, 375 Pa. 78, 99 A.2d 474, 39 A.L.R. 2d 1359.

The North Carolina construction of the Act is sufficient for the purpose of this case. It is unnecessary to construe the corresponding provision of Kentucky's Uniform Partnership Act. The same result has been urged as the proper one in Kentucky. See 43 Kentucky Law Journal 5, 26–27. In 24 Yale Law Journal 617, 637–638, Dr. William Draper Lewis, the draftsman of the Uniform Partnership Act, explains that the Act by particular provisions was designed to embody the English "out-and-out" rule.

Since North Carolina treats the deceased partner's interest in the partnership as personal property, his estate has a chose in action against the surviving partners; i. e., a right to demand money from them. See McClennen v. Commissioner of Internal Revenue, 1 Cir., 131 F.2d 165, 144 A.L.R. 1127, where it is said that the representative of a deceased partner does not succeed to any specific partnership property. In substance, the deceased partner's interest, to which his representative succeeds, is a chose in action, a right to receive money shown to be due him upon an accounting. The entire value of Harry Lynch's interest in the partnership in the sum of $49,886.85 was included, properly, in his gross estate as subject to the payment of Kentucky inheritance tax. Silberman v. Blodgett, 105 Conn. 192, 134 A. 778, modified on other grounds 277 U.S. 1, 48 S.Ct. 410, 72 L.Ed. 749.

Appellant contends that the tax collected by North Carolina, $2,361.77, should be deducted from the value of the interest in the partnership, leaving as taxable $47,525.08. He urges that the "fair cash value" of the partnership interest (the amount to be taxed under KRS 140.010) is the sum remaining after deducting the foreign inheritance tax paid, or that the tax paid to North Carolina is a deduction under KRS 140.090. The contentions will be discussed in reverse order. KRS 140.090 provides in part:

" * * * the following deductions and no others shall be allowed:

"(a) Debts of the decedent * * *; ›

"(b) Taxes accrued and unpaid * * *;

"(c) Death duties paid to foreign countries * * *;

"(d) Federal estate taxes * * *;

"(h) Cost of administration, including attorney's fees actually allowed and paid."

█ The language of the statute disallows any deduction not specifically mentioned. The legislative intent is plain that the only deductions to be allowed are those mentioned in the statute.

█ "Debts of the decedent" are debts which have accrued and are unpaid at the instant of death, not a debt which accrues by reason of death. An inheritance tax paid to a sister state is in satisfaction of an obligation that arises by reason of the death and incident to the transfer of the property occasioned thereby; hence, it is not a debt of the decedent. "Taxes accrued and unpaid" likewise refers to obligations existing prior to death. In Cochran's Ex'r and Trustee v. Commonwealth, 241 Ky. 656, 44 S.W. 2d 603, 606, 78 A.L.R. 710, it was held that federal income tax is deductible as a tax "accrued and unpaid," and thus is distinguishable from a sister state's inheritance tax. As pointed out in the Cochran case, the federal income tax had accrued in the sense that the right of the federal government to collect the tax and the liability therefor had become fixed before the death of the decedent. The Cochran case affords authority for the conclusions above stated under (a) and (b) of the statute.

It may appear unfair to allow a deduction for the "death duties paid to foreign countries" and to disallow the inheritance tax paid to a sister state. The Court said in the Cochran case that "Whether the law is fair or unfair is not for the court, but for the Legislature, to determine, * * *." The Court might be sympathetic toward appellant's position in this respect, but the remedy lies in the wisdom of the Legislature. Obviously, North Carolina is not a foreign country. Allowance of a deduction for "Federal estate taxes" indicates that the omission from the statute of inheritance tax paid to a sister state was not an oversight. Bingham's Adm'r v. Commonwealth, 196 Ky. 318, 244 S.W. 781, is not applicable since there was no statute then prescribing allowable deductions.

█ Appellant cites KRS 140.275 as a declaration of legislative policy against double taxation. This statute is cited out of context and applies only to property held in trust. Double taxation is permitted. State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436; Leflar, Conflict of Laws, Section 216, page 417.

█ It is insisted also that the North Carolina tax paid should be deductible as a cost of administration, such as an attorney fee. An inheritance tax is a tax on the transfer of property occasioned by the death of the transferor. The tax and exemptions therefrom are based on the character and relationship of the transferee. See KRS 140.060, exemption of transfers to educational, religious, and charitable institutions, and KRS 140.070, prescribing classes of relationship, exemptions, and rates. In Kelso v. Sargeant, 11 Cal.App.2d 170, 54 P.2d 26, 29, it was held:

"The law is well settled that inheritance taxes are not charges upon the estate of a decedent, nor are such taxes considered as expenses of administration. The tax is levied upon each share of the decedent's estate which is by him devised or bequeathed to a legatee or which such person inherits when any one leaves property, dying intestate."

It is concluded that the North Carolina tax paid does not constitute a cost of administration. Cf. In re Hastings' Estate, 183 Misc. 520, 49 N.Y.S.2d 527.

Finally, appellant urges that the "fair cash value" of the North Carolina property "as of the date of death" of the decedent means the value of the property less the amount of tax paid. KRS 140.010 provides that the tax shall be on the "fair cash value," which is further defined in Kentucky Constitution Section 172 as such value "estimated at the price it would bring at a fair voluntary sale." The phrase has been defined as: "What would the property have sold for on the day of assessment in the ordinary course of trade?" Board of Supervisors of City of Frankfort v. State National Bank of Frankfort, 300 Ky. 620, 189 S.W.2d 942, 943. A fair voluntary sale embraces the idea that neither the seller nor the purchaser is compelled to sell or buy and that the transaction is free from the assumption of any obligation except the transfer of the property for the amount agreed to be paid. The "fair cash value" of the property refers to the value of the property as of the date of death without any reduction by reason of taxes, liens, encumbrances, or otherwise.

Judgment affirmed.