RENDERED: MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0541-MR

MERICA MARTIN AND ESTATE OF
RENEE MARIE JONES, BY AND
THROUGH ITS EXECUTRIX,
MERICA MARTIN                                                    APPELLANTS


APPEAL FROM LAUREL CIRCUIT COURT
v.           HONORABLE GREGORY A. LAY, JUDGE
ACTION NO. 21-CI-00851


JAMES JONES                                                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

THOMPSON, CHIEF JUDGE: Merica Martin and Estate of Renee Marie Jones,

By and Through its Executrix, Merica Martin (Appellants) appeal from an order of

the Laurel Circuit Court overruling their motion to alter, amend, or vacate a partial

summary judgment in favor of James Jones (Appellee). Appellants argue that the

circuit court improperly interpreted Trust and Transfer on Death (TOD) documents to conclude that Appellee is entitled to one-half of the decedent's Single Investment Accounts. After careful review, we find no error and affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Merica Martin (Ms. Martin) and Appellee are siblings. On February 19, 2018, their mother, Renee Marie Jones (Ms. Jones) created the Renee Marie Jones Living Trust (the Trust). The Trust designated Ms. Martin, Appellee, and their half-brother, Brian Owens (Mr. Owens), as beneficiaries. Per the Trust, Appellant and Mr. Owens were to receive their shares outright, with Appellee's share remaining in the Trust after Ms. Jones death for the benefit of Appellee.

Per Article 6 of the Trust, Mr. Owens was to receive 1/4 of an Individual Retirement Account (IRA); Ms. Martin was to receive 3/8 of the IRA and 1/2 of the Single Investment Accounts; and Appellee was to receive 3/8 of the IRA and 1/2 of the Single Investment Accounts.

Thereafter, Ms. Jones executed TOD documents on all three of her Edward Jones accounts.[1] Per the TOD documents, Ms. Jones' IRA would transfer

---

[1] Accounts designated to transfer on death "pass outside of probate, with ownership passing directly to the named beneficiaries on the death of the owner." *Estate of Mcvey v. Department of Revenue*, 480 S.W.3d 233, 236 (Ky. 2015) (citation omitted).

on her death directly to her three children, with Mr. Owens receiving 1/4; Appellant receiving 3/8; and Appellee receiving 3/8. The TOD documents also provided that on Ms. Jones' death, one-half of the Single Investment Accounts would be directly transferred to Ms. Martin, with the other one-half remaining in the Trust for the benefit of Appellee.

On January 13, 2020, Ms. Jones amended her Trust so that on her death, Appellee's one-half share of the Single Investment Accounts would go directly to him and would no longer be held in trust for his benefit. She did not change the TOD beneficiary forms.

Ms. Jones died on April 23, 2021. Per her estate plan and supportive documentation, the IRA was distributed according to the Trust. The IRA distribution is not at issue. In addition, and per the TODs, one-half of the Single Investment Accounts was transferred to Ms. Martin, with the remainder being placed in the Trust. About two months later, Appellant, in her capacity as successor Trustee, transferred the Trust's Single Investment Account funds into a trust account. She then removed from it $20,442.00, which she said were funeral expenses.

On November 21, 2021, Appellee filed the instant action seeking his half of the Single Investment Accounts. In July and August, 2022, both parties filed motions for summary judgment as to these accounts. On November 22, 2022,

-3-

the circuit court granted partial summary in favor of Appellee. The judgment ordered Ms. Martin, in her capacity as successor Trustee, to distribute the funds remaining in the Trust to Appellee; to reimburse him for the funeral expenses paid out of the Trust; and, to pay the funeral expenses from the Estate account.

Thereafter, the Estate was closed and Appellee moved to dismiss the action. The court granted the motion and made the partial summary judgment in favor of Appellee final and appealable. Appellants then filed their motion to alter, amend, or vacate the summary judgment. In that motion, Ms. Martin argued that the half of the Single Investment Accounts that went into the Trust should be divided 50-50 between herself and Appellee, rather than all of it being distributed to Appellee. The court heard oral arguments on the motion on February 14, 2025, and subsequently denied Ms. Martin's motion. This appeal followed.[2]

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[2] Orders denying Kentucky Rules of Civil Procedure (CR) 59.05 motions generally "are interlocutory, *i.e.*, non-final and non-appealable and cannot be made so by including the finality recitations." *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 103 (Ky. App. 2011). Under circumstances void of prejudice, we may consider the appeal as "properly taken from the final judgment that was the subject of the CR 59.05 motion." *Id.* at 103 n.5 (citation omitted).

material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id*. "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ARGUMENTS AND ANALYSIS

Ms. Martin argues that the Laurel Circuit Court erred in its interpretation of the Trust, amendment, and TOD documents. While agreeing that the TOD documents designated that one-half of the Single Investment Accounts were to be distributed directly to her, with the remaining one-half going into the Trust, she maintains that the one-half that was transferred to the Trust should then be split 50-50 between herself and Appellee. She asserts that per the Trust

-5-

language, this is a proper distribution of the Single Investment Account assets in the Trust. She maintains that the circuit court's interpretation of the Trust, amendment, and TOD documents was erroneous, as it acknowledged Ms. Martin's receipt of one-half of the Single Investment Account fund, but improperly distributed the remaining one-half to Appellee. It is on this basis that she seeks an opinion reversing the order on appeal. Appellee has not filed an appellate brief.

The issue for our consideration is whether the Laurel Circuit Court properly interpreted the Trust, the January 13, 2020, amendment, and TOD documents as directing Appellee to receive one-half of the Single Investment Accounts. In examining trust language, courts employ the same rules applicable to interpreting wills. *Todd v. Hilliard Lyons Tr. Company, LLC as Tr. Under Will of Todd*, 633 S.W.3d 342, 345 (Ky. App. 2021). As noted by the Laurel Circuit Court, the most basic rule of trust interpretation is to determine the settlor's intent. *Id.* This intent has been characterized as "the polar star" toward which all interpretive efforts are guided, and absent some illegality, this intent will be controlling. *Id.* As summary judgment involves only legal questions and a determination of whether a disputed issue of material fact exists, we apply a *de novo* standard of review. *Id.*

Here, the intent of the settlor or grantor, Ms. Jones, is clearly expressed in the Trust language. It states at Section 6.01 as follows:

-6-

My Trustee will divide my residuary trust estate into separate shares for my descendants, based on the following fractions:

**Brian Owens**
1/4 of my IRA

**Merica Martin**
3/8 of my IRA
1/2 of my Single Investment Account(s)

**James Jones**
3/8 of my IRA
1/2 of my Single Investment Accounts(s)

This language is subject to but one interpretation. The Trust language unambiguously communicates that Ms. Jones intended for Ms. Martin and Appellee each to receive one-half of her Single Investment Account(s).

The TOD documents, however, complicate the analysis. They provide that one-half of the Single Investment Accounts was transferable on Ms. Jones' death directly to Ms. Martin, with the other one-half going to the Trust. This leaves the door open for the interpretation argued by Ms. Martin. The dispositive question, then, is this: did Ms. Jones intend for Ms. Martin and Appellee each to receive one-half of the Single Investment Accounts or did she intend for each of them to receive one-half of the portion of the Single Investment Accounts that were in the Trust?

Based on our *de novo* review of the record and the law, we agree with the Laurel Circuit Court that Ms. Jones intended for Ms. Martin and Appellee each

to receive one-half of the Single Investment Accounts. The Trust language clearly expresses this intent. Though the TOD documents somewhat muddy the water, the circuit court was properly guided by the settlor's intent, which is the polar star by which the court must be guided. *Todd*, *supra*. The circuit court's interpretation provides for distribution of the funds in conformity with the TOD documents (half each to Ms. Martin and the Trust), while also distributing those funds in alignment with Ms. Jones' clearly expressed intent in the Trust (half each to Ms. Martin and Appellee). This interpretation of the Trust, the amendment, and the TOD documents is supported by the record and the law.

## CONCLUSION

When the record is viewed in a light most favorable to Ms. Martin, with all doubts resolved in her favor, *Scifres*, *supra*, we conclude that Ms. Jones intended for Ms. Martin and Appellee each to receive one-half of the Single Investments Accounts. The Trust states this without ambiguity. Ms. Martin's interpretation, *i.e.*, that she should receive one-half of the Single Investment Accounts held at Edward Jones, plus one-half of the Single Investment Accounts which flowed into the Trust, would result in her receiving 75% of the Single Investment Accounts with Appellee receiving 25%. This interpretation cannot be reconciled with Ms. Jones' directive in the Trust that the Single Investment Accounts be distributed 50-50 between Ms. Martin and Appellee.

The circuit court correctly found that there were no genuine issues as to any material fact, and that Appellee was entitled to judgment as a matter of law. For these reasons, we affirm the summary judgment of the Laurel Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

Brittany N. Riley
London, Kentucky